UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL F. SCIORTINO, SR.                                CIVIL ACTION

V.                                                       NO. 16-11012

CMG CAPITAL MANAGEMENT GROUP, INC.                       SECTION F

ORDER AND REASONS

Before the Court is the defendant's motion to dismiss or, in the alternative, to transfer venue. For the reasons that follow, the motion to dismiss is GRANTED.

**Background**

This litigation arises out of a money management company's alleged failure to pay its former vice president commissions and bonuses he earned as well as accrued vacation and personal days he did not use.

CMG Capital Management Group, Inc. is a privately held management company that markets and sells its own financial products, including mutual funds, managed accounts, and variable annuities. In addition to developing and selling financial products, CMG serves as an investment adviser to clients

1

nationwide. Although CMG is authorized from a securities regulation standpoint to operate in all 50 states and the District of Columbia, its headquarters and principal place of business is in Pennsylvania. CMG has never maintained an office nor owned property in Louisiana.

CMG hired Michael F. Sciortino, Sr. as Executive Vice President, Managing Director, Head of Distribution on April 9, 2012. Then and now, Mr. Sciortino lives in St. Tammany Parish, Louisiana.

In early 2012, during the recruitment period leading up to Mr. Sciortino's employment, CMG and Mr. Sciortino negotiated the scope and terms of the employment arrangement, including where Mr. Sciortino would work, in light of their disparate locations. According to CMG, the recruitment occurred primarily in Pennsylvania: Mr. Sciortino traveled to Pennsylvania for an in-person interview prior to being offered the position and CMG negotiated the scope and terms of Mr. Sciortino's employment in person at CMG's Pennsylvania office and by phone from Pennsylvania. Mr. Sciortino underscores that the terms of the employment agreement were negotiated while he was in Louisiana and that the terms contemplate him working in CMG's office in Pennsylvania for only three to five days per month, with the remainder of his work being performed from his home office in Louisiana. Mr. Sciortino

also says he was paid in Louisiana and Louisiana state income taxes were withheld from his wages. Mr. Sciortino suggests that the unpaid wages at issue in this litigation were earned primarily through work performed by Mr. Sciortino in Louisiana.

Before he was employed by CMG, Mr. Sciortino began developing ideas for writing a book on marketing principles. Once he became employed by CMG, Mr. Sciortino decided to write the book on marketing principles using his industry and business experience as the basis for the book. Mr. Sciortino told CMG that he intended to write the book on his personal time, but that he planned to use the book to boost his notoriety, which he believed would as an indirect benefit allow him to get new potential clients for CMG. At Mr. Sciortino's request, CMG advanced $25,774.80 for the book. Mr. Sciortino contracted with Advantage Media Group, Inc. for the book's publication and wrote the book on his personal time.

On July 7, 2015, CMG Capital terminated Mr. Sciortino's employment. A week later on July 15, 2015 as part of discussions regarding severance pay, Mr. Sciortino paid CMG Capital $25,774.80 to settle any claims CMG might have for ownership or other rights to the book. In exchange, CMG Capital signed a written release of its rights to the book. On October 9, 2015, Mr. Sciortino's book, *Gratitude Marketing*, was released for publication by Advantage.

In April 2016, Mr. Sciortino sued CMG Capital in Louisiana state court, seeking to recover unpaid commissions, bonuses, and accrued vacation and personal days, as well as penalties, attorney's fees, and costs under the Louisiana Wage Payment Act. Mr. Sciortino also seeks a declaratory judgment that CMG Capital has no rights to *Gratitude Marketing*, that Mr. Sciortino does not owe CMG Capital any funds as a result of their agreement or that the July 15, 2015 release signed by CMG Capital released any claims CMG Capital might have had to the book.  CMG Capital removed the lawsuit to this Court, invoking this Court's diversity jurisdiction.  CMG Capital now seeks an order dismissing the plaintiff's lawsuit, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction; alternatively, CMG Capital seeks an order transferring venue of this case to a more convenient venue, which it says is the U.S. District Court for the Eastern District of Pennsylvania.

I.

A.

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the Court's exercise of personal jurisdiction over it.

When a nonresident defendant like CMG Capital Management Group, Inc. seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing the

Court's jurisdiction over the defendant, but need only make a prima facie case if the Court rules without an evidentiary hearing. See Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008); see also Luv N' Care v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir.), cert. denied, 548 U.S. 904 (2006).  The Court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery.  Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994); see Jobe v. ATR Mktg., Inc., 87 F.3d 751, 752 (5th Cir. 1996).  "In determining whether a prima facie case exists, this Court must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [the plaintiff's] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation."  Pervasive Software, Inc. v. Lexware GMBH & Co. KG, 688 F.3d 214, 219-20 (5th Cir. 2012)(quoting Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 343 (5th Cir. 2004)(alterations in original)(quotation omitted)).

*B.*

The Court may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied:  (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction comports with Due Process. See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270

5

(5th Cir. 2006). Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the two-part inquiry merges into one: whether this Court's exercise of jurisdiction over the defendant would offend due process. See La. R.S. 13:3201(B)(providing that a Louisiana court "may exercise personal jurisdiction over a nonresident on any basis consistent with . . . the Constitution of the United States"); Luv N' Care, 438 F.3d at 469; see also Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)(citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1994)(The Due Process Clause limits the Court's power to assert personal jurisdiction over a nonresident defendant.). The exercise of personal jurisdiction comports with Due Process when it is shown that (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." Choice

Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado, 615 F.3d 364, 367 (5th Cir. 2010)(citations omitted). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court'" in the forum state. McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S.Ct. 68 (2010).

The minimum contacts inquiry takes two forms, and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court is asked to exercise general or specific jurisdiction over the defendant. Choice Healthcare, Inc., 615 F.3d at 368 ("The 'minimum contacts' prong of the two-part test may be further subdivided into contacts that give rise to 'general' personal jurisdiction and 'specific' personal jurisdiction."). Regardless of whether the lawsuit is related to the defendant's contacts with the forum, courts may exercise general jurisdiction over any lawsuit brought against a defendant that has substantial, continuous, and systematic general contacts with the forum state. See Seiferth, 472 F.3d at 271 (citing Helicopteros Nactionales, 466 at 413-14); Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007)("Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction."). "If", on the other hand, "a defendant has relatively few contacts, a court may still

7

exercise specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"  Id.  General jurisdiction focuses on incidents of continuous activity within the disputed forum; specific jurisdiction is more constrained by virtue of a very limited nexus with the forum.

If a plaintiff demonstrates minimum contacts between the defendant and the forum state, then the Court may exercise personal jurisdiction unless the defendant makes a "compelling case" that the exercise of jurisdiction is unfair or unreasonable. Burger King Corp. V. Rudzewicz, 471 U.S. 462, 477 (1985); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999).  In determining whether the exercise of jurisdiction is fair and reasonable, the Court considers certain fairness factors: (1) the burden on the non-resident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies.  See Nuovo Pignone v. Storman Asia M/V, 310 F.3d 374, 382 (5th Cir. 2002)(citation omitted).

C.

1. General Jurisdiction

A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against it when its contacts with the state are so "'continuous and systematic' as to render [it] essentially at home in the forum." Goodyear Dunlop Tires Operations v. Brown, 131 S.Ct. 2846, 2851 (2011). The general jurisdiction inquiry is "dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum." Dickson Marine, Inc. v. Panalina, Inc., 179 F.3d 331, 339 (5th Cir. 1999). Rather than mere "minimum" contacts, "continuous and systematic" contacts must exist between the state and the foreign defendant because "the forum state does not have an interest in the cause of action." Id. The Fifth Circuit has noted that the continuous and systematic test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Submersible Sys., Inc. v. Perforadora Cent., 249 F.3d 413, 419 (5th Cir. 2001). "[V]ague and overgeneralized assertions that give no indication as to extent, duration, or frequency of contacts are insufficient to support general jurisdiction." Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 610 (5th Cir. 2008)(citation omitted)(reviewing past cases "to illustrate just how difficult it is to establish general

jurisdiction"). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." Id. (quoting Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 717 (5th Cir. 1999)).

For CMG to be haled into this Court based on general jurisdictional principles, it must have had continuous and systematic general contacts with Louisiana. The plaintiff's allegations and the record disclose few, if any, contacts between CMG and Louisiana. CMG does not maintain an office in Louisiana, nor does it advertise or own property in the forum. Perhaps the only general business contact with Louisiana, which appears to be the same as to all 50 states: CMG is authorized from a securities regulatory standpoint to perform investment services nationwide; in that regard, CMG completed a notice filing with the Louisiana Office of Financial Institutions/Securities Division. The vast majority of CMG's customers in the past and present are located outside of Louisiana.

For a corporate defendant, the place of incorporation and principal place of business are paradigm bases for general jurisdiction. Daimler AG v. Bauman, 134 S. Ct. 746 (2014); Monkton Ins. Servs. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014)(noting that it is "[i]ncredibly difficult to establish general

jurisdiction in a forum other than the place of incorporation or principal place of business."). CMG is incorporated, and maintains its principal place of business, in Pennsylvania. Nevertheless, Mr. Sciortino "does not concede that general jurisdiction does not exist." He suggests that he should be permitted to conduct jurisdictional discovery so that he might fully address general jurisdiction. There is no basis to support the exercise of general jurisdiction over CMG. See generally Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408 (1984)(finding no personal jurisdiction over a defendant in Texas, notwithstanding a number of contacts, including purchasing helicopters and parts for seven years, sending pilots to Texas for training, and one visit to Texas by defendant's chief executive officer). There is simply nothing in the plaintiff's allegations or in the jurisdictional facts proffered that would suggest that CMG's purposeful contacts with Louisiana are so substantial that it would be "at home" in Louisiana for the purposes of exercising general jurisdiction. See Daimler AG, 134 S. Ct. at 758-60. And, because the plaintiff's request for jurisdictional discovery rests entirely on hopeful speculation, the request is denied.

    2. Specific Jurisdiction

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from,

11

or connected with, the very controversy that establishes jurisdiction.'" <u>Goodyear Dunlop Tires Operations</u>, 131 S.Ct. at 2851. The Fifth Circuit has articulated a three-step specific personal jurisdiction inquiry:

> (1) Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts?
> (2) Did the defendant purposefully direct its activities toward the forum state or purposefully avail itself of the privilege of conducting activities therein; and
> (3) Would the exercise of personal jurisdiction over the defendant be reasonable and fair?

<u>Pervasive Software, Inc. v. Lexware GMBH & Co. KG</u>, 688 F.3d 214, 227 (5th Cir. 2012). "[T]he defendant's contacts [with the forum] must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person,'"; however, the Fifth Circuit observes that, unlike general jurisdiction, "specific jurisdiction may exist where there are only isolated or sporadic contacts' . . . so long as the plaintiff's claim relates to or arises out of those contacts." <u>ITL, Int'l, Inc. v. Constenla, S.A.</u>, 669 F.3d 493, 498-99 (5th Cir. 2012)(citations omitted).

Finally, specific personal jurisdiction is claim-specific; that is, if a plaintiff's claims relate to different forum contacts of the defendant, then specific jurisdiction must be established

12

for each claim. Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274-75 (5th Cir. 2006); McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S.Ct. 68 (2010).

Here, all of the plaintiff's claims relate to the same alleged forum contacts of CMG: that is, Mr. Sciortino's physical presence in Louisiana while employed by CMG. By knowingly entering into an employment agreement with a resident of Louisiana and foreseeing that Mr. Sciortino would perform a majority of his work in Louisiana, the plaintiff's specific jurisdiction theory goes, there is sufficient nexus between Mr. Sciortino's wage and book rights claims and CMG's forum-related contacts to support exercise of personal jurisdiction over CMG in Louisiana. The Court disagrees. What is absent from the plaintiff's specific jurisdiction theory is precisely what settled specific jurisdiction doctrine demands: the defendant purposefully directing its activities toward Louisiana such that it might reasonably expect to be haled into court here.

In assessing the due process limits on this Court's authority over a nonresident defendant, the Court is mindful that its focus must be on the relationship between the defendant, the forum, and the litigation. Here, the plaintiff's claims involve compensation and other benefits related to Mr. Sciortino's employment relationship with CMG. Both sides submit affidavits setting forth

13

jurisdictional facts. CMG submits a sworn declaration of its Chief Executive Officer, Stephen Blumenthal. According to Mr. Blumenthal:

- CMG neither maintains an office nor owns property in Louisiana.
- Most of the CMG personnel Mr. Sciortino supervised were located in Pennsylvania; none were located in Louisiana.
- Mr. Sciortino applied for the position while he was in Pennsylvania, traveled to CMG's offices for an in-person interview, negotiated the terms of the employment while he was physically present in Pennsylvania, as well as through phone conversations with CMG's Chief Executive Officer, Stephen Blumenthal, while Mr. Blumenthal was in Pennsylvania.
- Mr. Blumenthal never traveled to Louisiana to meet with Mr. Sciortino, nor did any CMG employee or agent ever meet with Mr. Sciortino in Louisiana prior to or during his employment with CMG.
- During his employment with CMG, Mr. Sciortino reported to Przemyslaw Grzywacz, who is a resident of Pennsylvania and works from CMG's Pennsylvania office.
- Mr. Sciortino is the only CMG employee that resided in Louisiana while working for the company.
- Although Mr. Sciortino lived in Louisiana and often worked remotely from his home, he was based out of and reported to CMG's Pennsylvania office. As shown on his CMG business cards, Mr. Sciortino's business mailing address was CMG's Pennsylvania office and his office telephone number had a Pennsylvania area code.
- Mr. Sciortino's base salary and any commission or bonus payments were paid with funds that originated from, and were administered through, the company's Pennsylvania headquarters. CMG has not paid state income taxes in Louisiana, but did pay payroll taxes and withholdings in Louisiana based on Mr. Sciortino's residence while he was employed at CMG.
- During his CMG employment, Mr. Sciortino's vacation time was administered through the company's Pennsylvania headquarters.
- During his CMG employment, Mr. Sciortino authored *Gratitude Marketing,* for which CMG advanced funds in exchange for the right to use the book in CMG's marketing and sales efforts. The terms of this arrangement were negotiated in-person at CMG's Pennsylvania office and through phone conversations

14

>while Mr. Blumenthal was in Pennsylvania. The funds CMG paid to the publisher originated from and were administered through CMG's Pennsylvania office.

In short, CMG submits that its only contact with Louisiana relative to this litigation is that at one time a single employee was permitted to work remotely where he happened to reside in Louisiana.

Mr. Sciortino states these facts in his affidavit:

- He lives in Mandeville, Louisiana.
- Around the end of 2011, CMG began recruiting him.
- After an initial meeting with CMG in January 2012, CMG began negotiations with him through email regarding employment. For example, in a February 10, 2012 email CMG's Managing Director, PJ Grzwacz sent a proposal contemplating that Mr. Sciortino would be a full time employee working only 3-5 days per month at CMG's Pennsylvania office. All email and phone communication during the recruitment period was conducted by Mr. Sciortino from his home in Louisiana. In a March 13, 2012 email, Mr. Blumenthal inquired how Mr. Sciortino would work and manage his team from Louisiana.
- Once he began working for CMG, Mr. Sciortino worked only 3-5 days each month in Pennsylvania; all other days, Mr. Sciortino worked out of his home office in Louisiana.
- The wages Mr. Sciortino earned while working for CMG were paid to him in Louisiana and deposited into his Louisiana bank account. Mr. Sciortino's W-2s for 2012-2015 note that CMG withheld Louisiana income taxes from his wages.
- Mr. Sciortino wrote *Gratitude Marketing* from his home in Louisiana.
- Mr. Sciortino first raised the issue of ownership and advancement of funds for *Gratitude Marketing*'s publication with Mr. Blumenthal in-person at a conference in Florida. Other negotiations about the book took place while Mr. Sciortino was in Louisiana.

The record discloses that the employment relationship was negotiated by the plaintiff in person in Pennsylvania as well as

15

using the telephone and email with CMG employees located at all times in Pennsylvania and the plaintiff located in Louisiana. The plaintiff's bonus, commissions, and vacation time and book rights were all negotiated and administered in Pennsylvania, where CMG is incorporated and headquartered. The plaintiff worked from his house in Louisiana as well as from CMG's office in Pennsylvania.

That CMG had an employment arrangement with a resident of Louisiana does not satisfy the purposeful availment requirement, which cannot merely be inferred from "the mere fortuity that the plaintiff happens to be a resident of the forum." Patterson v. Dietze, Inc., 764 F.2d 1145, 1147-48 (5th Cir. 1985). There is no evidence or suggestion that, by acquiescing to its employee's wish to work primarily remotely from Louisiana more often than working from CMG's Pennsylvania offices, CMG purposefully availed itself of the privilege of conducting business in Louisiana, invoking the benefits and protections of its laws. To the contrary, nothing in the plaintiff's allegations or in the record supports a finding that CMG opened up a Louisiana office or a "CMG outpost" at Mr. Sciortino's house.[1] No CMG employee ever traveled to Louisiana before or during Mr. Sciortino's employment with CMG. Mr. Sciortino reported to Mr. Grzwacz in Pennsylvania and those CMG

---

[1] Mr. Sciortino's CMG business cards reflect his business mailing address as the CMG Pennsylvania office and telephone number.

16

employees Mr. Sciortino managed were at all times located in Pennsylvania.

"It is now well settled that 'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in the other party's home forum.'" Pervasive Software Inc., 688 F.3d at 222-23 (citation omitted). "[M]erely contracting with a resident of [Louisiana] is not enough to establish minimum contacts." Moncrief Oil Intern. Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007). Moreover, the Fifth Circuit has rejected the plaintiff's foreseeability argument: "[m]ere foreseeability, standing alone, does not create jurisdiction." Id. at 313 ("a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas"). The foreseeability that is critical to the due process analysis concerns CMG's conduct and connection with Louisiana and whether or not that connection is such that it should reasonably anticipate being haled into court in Louisiana.

The plaintiff's physical presence in the forum is simply irrelevant to an assessment of CMG's purposeful contacts with Louisiana. Patterson, 764 F.2d at 1147-48. Put differently, "the plaintiff cannot be the only link between the defendant and the

forum." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." Id. ("however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'"). Again, there must be a relationship between CMG, the forum, and the litigation; and it must be CMG, not the plaintiff, who creates the suit-related contact with the forum. See id. ("our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there").

With respect to the plaintiff's claims to recover earned but unpaid wages and accrued but unused vacation as well as his claim regarding ownership of *Gratitude Marketing*, the plaintiff has failed to make even a prima facie showing of any act by which CMG purposefully availed itself of the privilege of conducting activities within the forum state of Louisiana so as to invoke the benefits and protections of its laws. Accordingly, the assertion of specific personal jurisdiction over CMG in Louisiana would offend due process. That an employer acquiesced in allowing an employee to work remotely from a certain state is a coincidental, not purposeful or deliberate, contact by CMG with the forum. It

simply does not constitute deliberate affiliation by the employer with the forum state. The jurisdictional premise advanced by the plaintiff rests on the mere fortuity of *the plaintiff* residing in Louisiana and cannot establish specific jurisdiction over CMG.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motion to dismiss for lack of personal jurisdiction is GRANTED. The case is dismissed without prejudice.

New Orleans, Louisiana, September 14, 2016

MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE